FILED
SEP 30 2010
USDC WP SDNY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------x
WILLIAM SZYMCZAK, on behalf of himself and all others similarly situated,

Plaintiff,

- against -

NISSAN NORTH AMERICA INC.,

Defendant.
---------------------------------------------------x

Docket No. 10 CIV 07493

**CLASS ACTION COMPLAINT**

JUDGE MOTZ

**JURY TRIAL DEMANDED**

Plaintiff, WILLIAM SZYMCZAK ("Plaintiff"), on behalf of himself and all others similarly situated, by his undersigned counsel, alleges, against Defendant Nissan North America Inc., ("Nissan" or "Defendant"), the following upon personal knowledge as to his own acts, and upon information and belief, based on the investigation conducted by his counsel, as to all others allegations:

## SUMMARY OF THE ACTION

1. Plaintiff brings this class action complaint on behalf of himself and all others in the State of New York who purchased and/or leased a model year 2005 Nissan Pathfinder ("Pathfinder" or "Vehicle") which had or currently has a defect caused by coolant from the radiator leaking into the transmission (the "Class").

2. As alleged herein in greater detail, the 2005 Pathfinders are equipped with defective radiators which leak coolant into the Vehicle's transmissions thereby causing damage to the transmission resulting in loss of power to the drive train, often leading to complete transmission

failure. In addition, this defect (the "Defect") is unreasonably dangerous, as it can cause complete transmission failure while the Pathfinder is being driven. This can result, and has resulted, in the Vehicle breaking down on the road and grinding to a sudden stop.

3. Nissan was on notice that the Pathfinder's radiators were defective and not fit for their intended purpose and that the Defect caused damage to, or loss of, the car's transmission. Nissan concealed the existence and nature of said Defect from Plaintiff and the Class members at the time of purchase or lease of their vehicles and thereafter, including during servicing visits. Nissan has not recalled the Pathfinder to repair the Defect, nor has it offered to repair the Defect free of charge, nor has it offered to reimburse Nissan owners, present or past, who incurred costs relating to repair or replacement of the radiator and/or damage to the transmissions.

4. The Basic Warranty on the Pathfinder covered repairs "needed to correct defects in materials or workmanship" up to 36 months or 36,000 miles, whichever came first. In addition, there was additional warranty coverage entitled "Powertrain Coverage" for up to 60 months or 60,000 miles, whichever came first. The Powertrain Coverage included:

> **ENGINE**
> Cylinder heads and block and all internal parts, rocker covers and oil pan, valve train and front cover, timing chain and tensioner, oil pump, water pump and fuel pump, fuel injectors, intake and exhaust manifolds and supercharger, flywheel, seals, and gaskets.
>
> **TRANSMISSION AND TRANSAXLE**
> Case and all internal parts, torque converter and converter housing, automatic transmission control module, transfer case and all internal parts, seals and gaskets, clutch cover and housing, and electronic transmission controls.

5. The radiator leak and transmission damage to Plaintiff's Pathfinder occurred within the period covered by the Powertrain Coverage, yet Nissan refused to completely identify the

problem until after the Powertrain Coverage had expired even though Plaintiff had brought the car in because of potential radiator issues which could have been repaired prior to the transmission damage and under the warranty coverage. Upon information and belief, Nissan has refused to compensate other members of the Class for repairs to their Pathfinder's radiators and transmission caused by the Defect even when the repairs took place before the expiration of the Powertrain Coverage on the improper grounds that the transmission damage resulting from the Defect is not covered. Also, upon information and belief, Nissan has refused to compensate other members of the Class for repairs to their Pathfinders caused by damage from the Defect upon on the grounds that the Basic Warranty and/or Powertrain Coverage have expired, notwithstanding that Defendant was aware of the Defect much earlier and aware that the Defect could result in a dangerous condition, yet failed to inform Class members thereof. Consequently, Plaintiff and the Class members have been required to pay for repairs resulting from the Defect. Defendant is liable to Plaintiff and members of the Class because:

a. The repairs were covered under the Basic Warranty because the repairs resulted from "defects in materials or workmanship" ; and/or

b. The repairs were covered under the Powertrain Coverage because damage to the Transmission was covered; and/or

c. Even if the repairs occurred after both warranty periods expired, the Defect existed prior to expiration of the warranty periods and was known to exist by Nissan during the warranty periods, making the durational limits that Nissan seeks to rely on unconscionable; and/or

d. the Defendant knowingly concealed the Defect.

6. Plaintiff alleges that Nissan is responsible and liable for the costs of replacing or repairing the Vehicles' defective radiators and/or the transmissions which were damaged by the leaking coolant from the radiators and hereby seeks reimbursement to Plaintiff and members of the proposed Class for such needed repairs and for attorneys' fees and costs.

**PARTIES**

7. Plaintiff brings this action both in an individual capacity and on behalf of all others similarly situated. In or about January 2006, Plaintiff purchased a 2005 Nissan Pathfinder from Middletown Nissan, Inc., a Nissan dealership, located in Orange County, New York. At the time of the Purchase, Plaintiff was a resident of Orange County, State of New York. The vehicle was registered and insured in the State of New York. Plaintiff intended to use and did use the vehicle in New York.

8. Defendant Nissan is a foreign corporation, with its principal place of business and national headquarters located in Tennessee. Defendant designs, manufacturers and sells automobiles and other vehicles under several prominent brand names, includes the Nissan Pathfinder® throughout the United States, including in the State of New York. In addition, Defendant's 2005 Pathfinder models are advertised, distributed and sold at multiple places of business in the State of New York through Defendant's dealers, among other places.

**JURISDICTION AND VENUE**

9. This Court may assert diversity jurisdiction of this matter under the Class Action Fairness Act, in that the Plaintiff resides in the State of New York, and Defendant's principal place of business is in Tennessee. Defendant is not incorporated in New York. Defendant, however, has sold and/or leased, at minimum, a sufficient number of defective Vehicles in the State of New

York, and the amount in controversy exceeds $5,000,000. The case is properly brought in this District as Plaintiff resides in the District, Defendant sold the defective vehicles in the District, maintains sales and service authorized dealers in the District and advertises its vehicles for sale in the District.

## FACTUAL BACKGROUND AND SUBSTANTIVE ALLEGATIONS

10. Plaintiff purchased a new 2005 Pathfinder vehicle from a Nissan dealership located in Newburgh, New York in or about January 2006, while a resident of the State of New York. The Vehicle was delivered to Plaintiff in New York and/or put in service in or about January, 2006.

11. At the time of purchase, Nissan, through its dealership, employees, agents and servants represented to Plaintiff that it thoroughly inspected the Vehicle and that the entire Vehicle was in good condition and fit for its intended purpose.

12. At all relevant times, the Vehicle was serviced timely and properly.

13. When the Vehicle had approximately 14,282 miles, it was brought into Defendant's dealership, which claimed to identify a small leak. The same or similar problem was identified again at around 22,000 miles when again, the Vehicle was brought into the Nissan dealership. At neither time did the Defendant reveal that the vehicle model had a Defect in the cooling system. At approximately 52,000 miles, the Vehicle again was brought into Nissan's dealership , because of problems with the Pathfinder's cooling system. At this time, the Defendant again concealed that the Vehicle model had the Defect in that the cooling system radiator was prone to leaking fluid into the Vehicle's transmission. Again the vehicle was brought into Nissan at between 60,000 and

61,000 miles and then at 65,825 miles. On this final visit, the dealership claimed that Plaintiff needed to replace the radiator. At no time did Nissan inform Plaintiff that the 2005 Pathfinders had been experiencing coolant system and radiator problems.

14. Unknown to the Plaintiff, the 2005 Pathfinder had a defective radiator which leaked coolant into the transmission system, thus destroying the transmission. Despite Nissan's knowledge of the fact that this model Vehicle had the Defect which caused the radiator fluid to leak into the transmission Nissan continued to design, manufacture and sell or lease the defective 2005 Pathfinders while failing to correct and concealing the existence and nature of the Defect.

15. Plaintiff and/or his wife were informed by Nissan on the visit, described above, at 65,825 miles that the repairs to the Pathfinder caused by the leaking radiator would cost several thousands of dollars and that it would not be a warranty item under either the 3 year/36,000 mile warranty or the 5 year/60,000 Powertrain Coverage. As a result, Plaintiff had to bear the entire expense to have both the Pathfinder's radiator and transmission replaced. Plaintiff had the repairs made at a cost of approximately $5500 in or about March 2010.

16. Plaintiff subsequently learned that the 2005 Pathfinder model had the Defect. Plaintiff was informed further that in or about early 2005 it became apparent to Nissan that there was a design and a manufacturing defect in the radiator and transmission systems.

17. Nissan, nevertheless, continued to represent to new purchasers and/or lessees of the Pathfinders, as it did with Plaintiff, that said Pathfinders, including the integrity of their radiator and transmission assemblies, were properly designed, in good working condition, and fit for their intended purpose.

18. Nissan, through its dealerships, agents, servants and employees, were put

on actual and/or constructive notice of the defective radiators and resultant transmission damage in the 2005 Pathfinders since at least the beginning of 2005. Thus, when Plaintiff purchased his Pathfinder in or about January 2006, and when the Vehicle was brought into Nissan's dealership on multiple occasions, Nissan knew, or should have known, that the radiator leaked coolant which caused transmission damage and that thus, these Vehicles contained the Defects. Nissan, nevertheless, failed to disclose the existence and nature of the Defect and any advertisements, agreements, publications, websites, owner manuals, warranty agreements or literature given to new purchasers or lessees of the Vehicle, including Plaintiff and members of the Class. Nissan also failed to provide owners and/or lessees of the Vehicle with any written warnings or notices regarding the Vehicle's defective radiators and/or transmissions. Further, Nissan refused to cover the cost of replacing these parts claiming that such costs were not covered by the Basic Warranty or Powertrain Coverage, even though (a) the radiator Defect surfaced prior to expiration of the Basic Warranty and/or Powertrain Coverage on Plaintiff's Vehicle and (b) the durational limit of either the Basic Warranty period or the Powertrain Coverage was unconscionable and should be stricken as the damage was the result of a Defect in design and/or manufacture known to the Defendant but concealed from Plaintiff and the similarly situated Class members.

19. Further, even though Nissan had actual knowledge of the Defects described above, it did not correct the Defect and concealed the existence of the Defect in the 2005 Pathfinder.

20. Upon information and belief, as early as 2005, Nissan was, in fact, aware of the Defect and the inherent and dangerous driving problem the Defect created. Upon information and belief, and for purely economic motives, the Defendant chose to continue to produce Pathfinder vehicles with defective radiators since it was less expensive to do that than to modify the

manufacturing or design process to correct the Defect in that model or initiate any informal or formal recall.

22. Various complaints filed by purchasers of the Pathfinder vehicles with the National Highway Safety Administration ("NHSTA") *just in the past two months* demonstrate the potential dangerous nature of the defective condition. For example, one consumer's complaint regarding an occurrence as recent as August 9, 2010 stated:

> MY 2005 NISSAN PATHFINDER BEGAN TO SHUTTER THEN JERK BACK INTO NORMAL DRIVING AS IT REACHED SPEEDS OF 60-70 MPH. IT WAS VERY SPORADIC IN THE BEGINNING, BUT STARTED TO HAPPEN MORE FREQUENTLY AND AT LOWER SPEEDS FOR A LONGER PERIOD OF TIME. I BROUGHT THE TRUCK INTO NISSAN WITH 70,000 MILES, AT WHICH TIME I WAS TOLD THAT THE RADIATOR LEAKED INTO THE TRASMISSION CAUSING THE NEED FOR BOTH TO BE REPLACED AT THE COST OF $6700.00. I DID ALOT OF RESEARCH AND DISCOVERED THAT HUNDREDS AND HUNDREDS OF PEOPLE WITH THE 2005 NISSAN PATHFINDER WITH APROXIMATELY THE SAME MILEAGE (JUST AFTER WARRANTY EXPIRES) ARE EXPERIENCING THE SAME ISSUES. IT SEEMS AS THOUGH A FAULTY RADIATOR SYSTEM WAS INSTALLED INTO THESE VEHICLES

23. Another complaint filed with the NHSTA on or about August 14, 2010 stated:

> NOTICED ROUGH SHIFTS IN TRANSMISSION, EVENTUALLY FAILED TO ENGAGE 5TH GEAR. TOOK TO DEALER, TRANSMISSION LINES INSIDE RADIATOR HAD RUPTURED. REPLACED TRANSMISSION, RADIATOR AND LINES AT A COST OF OVER $8000 AND 4 WEEKS TIME. THIS OCCURRED AT 67K MILES. AT 87K MILES, RADIATOR FLUID IS MILKY AND SHOWS SYMPTOMS OF Another RUPTURE OF COOLANT LINES INSIDE TRANSMISSION. DEALER AND NISSAN USA DO NOT RECOGNIZE THIS AS A SAFETY ISSUE OR Inherent DEFECT IN ENGINEERING. HOWEVER, A SIMPLE SEARCH WILL SHOW AN EXTREMELY LARGE NUMBER OF PEOPLE WITH SIMILAR ISSUES CAUSED BY FAULTY COOLING LINES IN THE RADIATOR RUPTURING CAUSING TRANSMISSION ABRUPT BEHAVIOR AND THE DANGER FOR LOSS OF VEHICLE CONTROL DUE TO THE FAILURE.

24. On August 23, 2010 another person from Tarpon Springs, Fla. complaining states:

> I OWN A 2005 NISSAN PATHFINDER LE, IT CURRENTLY HAS 64,000 MILES, AT APPROX. 58,000 MILES I NOTICE EXCESSIVE VIBRATION THRU OUT THE VEHICLE AT ABOUT 74MPH, I TOOK THE VEHICLE TO HAVE THE TIRES BALANCED AND ROTATED

> BUT THIS DID NOT FIX THE PROBLEM, TOOK THE VEHICLE TO NISSAN WHO TOLD ME THEY COULD NOT DUPLICATE THE PROBLEM BUT I SHOULD KEEP AN EYE ON IT, WHEN IT WAS TIME FOR MY OIL CHANGE I TOLD THEM THE PROBLEM STILL EXISTS AND AGAIN THEY COULD NOT FIND A PROBLEM SO THEY RE-BALANCE THE TIRES WHICH DID NOT CHANGE ANYTHING. I DID SOME RESEARCH ONLINE ONLY TO FIND OUT THAT THERE ARE HUNDREDS OF THREADS REGUARDING THIS INSIDENT WERE THE RADIATOR COOLANT LINE LEAKS INTO THE TRANSMISSION AND CAUSING DAMAGE TO THE TRANSMISSION, IT IS A KNOWN ISSUE LEADING TO THE REPLACEMENT OF THE RADIATOR AND TRANSMISION, CAR SHAKES TREMENDOUSLY AS IF IT WERE FALLING APART, HOW CAN THERE BE SO MANY COMPLAINTS AND YET NISSAN DOES NOTHING TO FIX IT, EXTENDED WARRANTIES COVER TRANSMISSION DAMAGE BUT YOUR STILL LEFT WITH A $1000.00 BIL FOR THE RADIATOR

25. A driver from Temple, Texas, posted a complaint on the NYSTA website on August 16, 2010 which stated:

> THE COOLANT LINE IN THE RADIATOR GOT A LEAK AND MIXED TRANS[MI]SSION FLUID WITH THE COOLANT CAUSING ME TO HAVE TO REPLACE THE RADIATOR. NOT SURE IF THIS IS WHAT CAUSES A MISS FIRE IN CYLINDER # 2 BUT NOW THERE IS A PROBLEM WITH THAT AS WELL. HOPEFULY IT WAS CAUGHT IN TIME AS NOT TO DAMAGE THE TRANSMISSION. I HOPE NISSAN WILL OWN UP TO THIS PROBLEM AND MAKE THE NECESSARY REPAIRS AND RESTITUTION TO PATHFINDER OWNERS.

26. A complaint posted on the NHSTA website on August 5, 2010 from a driver of a 2005 Pathfinder in Westfield, Mass. demonstrates that the Defect has resulted in a dangerous driving condition:

> 2005 NISSAN PATHFINDER DEFECTED RADIATORS LEAKING INTO TRANSMISSION, RUSTING COMPONETS LEADING TO TRANSMISSION SLIPPING AND FAILURE, I WAS ON THE MASS PIKE HIGHWAY GOING ABOUT 60 WHEN MY PATHFINDER JUST PULL BACK LIKE YOU DROPPED IT IN LOW, 18 WHEELER ALMOST DROVE RIGHT THREW MY BACK OF PATHFINDER, THIS HAS HAPPENED MORE THEN ONE TIME, SOMETIMES WHILE STOPPED IN TRAFFIC IT FEELS LIKE THE TRASMISSION IS PULLING FORWARD WITHOUT PUTTING YOUR FOOT ON THE GAS, I HAVE DONE SOME RESEARCH ONLINE TO FIND THE SAME PROBLEM MANY OTHERS ARE HAVING IN THE RADIATOR THERE IS TRANSMISSION FLUID( LOOK) FOR WHITE MILKY SUBSTANCE ALSO ANTEFREEZE GOING INTO TRASMISSION, PLEASE SEARCH THE WEB FOR 2005 NISSAN PATHFINDERS COMPLAINTS AND PROBLEMS, THIS IS VARY DANGEROUS TO BE DRIVING IT IS UNPREDICTABLE WHEN IT HAPPENS AND I WAS TOLD JUST A MATTER OF DAYS BEFORE I WILL HAVE TO

REPLACE BOTH RADIATOR AND TRANSMISSION, THIS IS A TOTAL DEFECT ON NISSAN, NOT FAIR AT ALL, THERE SHOULD BE A RECALL ON THIS A BIG SAFTY ISSUE COULD CAUSE A SERIOUS ACCIDENT

That the 2005 Nissan Pathfinder was experiencing significant problems with radiator leaks and damage to transmission was known to Defendant. It was also known to the Defendant that this Defect caused a potentially dangerous driving condition if not corrected when experienced by the vehicle owner.

## CLASS ACTION ALLEGATIONS

27. Plaintiff brings this action on his own behalf and on behalf of all others persons similarly situated, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), on behalf of a class, consisting of all persons who purchased or leased in New York the 2005 Nissan Pathfinder vehicle (the "Class"). Excluded from the class are Defendants, officers and directors of the company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest. Plaintiff asserts that the Class may be divided into two subclasses. The first consists of all Class members who have experienced some or all of the aforementioned problems with their Pathfinders and whose Vehicles had the Defect and have expended sums to repair their vehicles as a result (the "Damages Subclass"). The second seeks declaratory relief, and consists of Class members who will have or may have the defective radiator and/or transmission problems manifest in the future. (the "Declaratory Relief Subclass"). Some Class members may overlap the subclasses, since they have paid for a replacement, and thereby suffered damages, but to the extent they may again experience the Defect and require additional radiator or transmission repairs

beyond that for which they paid, they are entitled to declaratory relief. Except where otherwise stated, the term "Class" includes both subclasses.

28. The Class which Plaintiff seeks to represent is defined as:

> All persons who purchased and/or leased a 2005 Nissan Pathfinder automobile in the State of New York. The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trustand other business and governmental entities. Excluded from this Class are any persons or other entity related to or affiliated with Defendant; any person, firm, trust, corporation, or other entity who purchased, for resale, from Defendant, or any entity related to or affiliated with Nissan, a new Pathfinder model year 2005 or any person who has an action for damages for personal injury or death or property damage against Defendant.

**NUMEROSITY**

29. The members of the Class are so numerous that joinder of all members is impracticable. The Class is made up of thousands of members. The precise number of Class members can only be ascertained through discovery, which includes Defendant's sales, service, maintenance and complaint records. The disposition of their claims through a class action will benefit both the parties and this Court.

**COMMON QUESTIONS OF LAW AND FACT**

30. There is a well-defined community of interest in the questions of law and fact involved affecting the Plaintiff and members of the Class.

31. The questions of law and fact common to the Class, and in particular, the Damages Subclass, predominate over questions which may affect individual members, and include the following:

(a) Whether the radiators in the 2005 Pathfinders contained a defect which caused them to leak and whether such radiators failed to conform to industry standards or contained other substantial defect.

(b) Whether any leak from the 2005 Pathfinders' radiator caused damage to or loss of the vehicle's transmission;

(c) whether the Defect constitutes a breach of the implied warranty of merchantability and of express warranty;

(d) whether the Defendant violated New York's General Business Law § 349;

(e) whether members of the Class are entitled to be notified and warned about the Defect and are entitled to the entry of final and injunctive relief compelling Defendant to issue a notification and warning to all class members concerning such a defect;

(f) whether Class members are entitled to actual damages and if so, the appropriate amount thereof;

(g) whether Defendant deliberately misrepresented or failed to disclose material facts to Plaintiff and the Class members;

(h) Whether Defendant improperly gave an express warranty which was limited by time despite Defendant's knowledge that the defect with the radiators and/or resultant transmission damage would become apparent after either the Basic Warranty expired or after the Powertrain Coverage expired; and

(i) whether the durational limits of the Basic Warranty and/or the Powertrain Warranty as applied to this significant defect are improper, unconscionable and therefore unenforceable.

**TYPICALITY**

32. The claims and defenses of Plaintiff, as the representative Plaintiff, are typical of the claims and defenses of the Class because Plaintiff and the Class members all owned Vehicles with defective radiators which were designed, manufactured and sold by Defendant. Plaintiff, like all Class members, purchased or leased a 2005 Pathfinder without having received any warning or notification from the Defendant of the radiator defect.

**ADEQUACY OF REPRESENTATION**

33. Plaintiff, as the representative Plaintiff, will fairly and adequately assert and protect the interests of the Class as:

(a) Plaintiff has hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the Class; and

(b) Plaintiff has no conflict of interest that will interfere with the maintenance of this class action.

**PREDOMINANCE**

34. With respect to the Damages Subclass and/or Class, questions common to the class predominate over those which only affect individual owners. This case involves one model car. The radiator systems and transmissions are interchangeable from one model to the next. The radiators were defective regardless of who was driving the Vehicle or how they were being driven.

Liability will primarily be predicated upon the jury's evaluation of the design of the radiator and the transmission and Defendant's awareness of the problem and its effort to resolve it.

**SUPERIORITY**

35. A class action provides a fair and efficient method for the adjudication of controversy for the following reasons:

(a) The common questions of law and fact set forth above predominate over any questions affecting only individual Class members;

(b) The Class is so numerous as to make joinder impracticable. The Class, however, is not so numerous as to create manageability problems. There are no unusual legal or factual issues which would create manageability problems;

(c) Prosecution of a separate action by individual members of the Class would create a risk of inconsistent and varying adjudications against Defendant when confronted with incompatible standards of conduct;

(d) The claims of the individual Class members are small in relation to the expenses of litigation, making a class action the only procedure in which Class members can, as a practical matter, recover; and

(e) A class action would be superior to and more efficient than adjudicating thousands of individual lawsuits.

**ESTOPPEL FROM PLEADING AND TOLLING OF APPLICABLE STATUTES OF LIMITATIONS**

36. Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

37. Defendant is estopped from relying upon any statutes of limitation by reason of the r fraudulent misrepresentations of its officers, employees and agents, suppression and concealment of material facts, and any applicable statutes of limitation are tolled by such conduct.

**FIRST CAUSE OF ACTION**
**(Deceptive Trade Practices)**
**(Violation of General Business Law § 349 & 350 Deceptive Acts and Practices)**

38. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein. Plaintiff asserts this cause of action on behalf of himself and the Class.

39. Defendant's practices, acts, policies and course of conduct, as described above, were intended to induce, and did induce, Plaintiff and the Class Members to purchase and/or lease the above-mentioned Vehicle with the defective radiator and transmission system design.

40. Defendant sold and/or leased the Class Vehicles knowingly concealing that they contained the design Defect.

41. Defendant's practices, acts, policies and course of conduct are actionable in that:

(a) Defendant actively and knowingly misrepresented to Plaintiff and the Class Members at the time of purchase or lease that the Class Vehicles, including the radiator and transmission system design of said Vehicles, did not contain a material defect, were in good working order, not defective and merchantable;

(b) Defendant failed to give adequate warnings and notices regarding the use, defects and problems with the radiator and transmission system defect to consumers who purchased or leased said vehicles, despite the fact that Defendant possessed prior knowledge of the inherent defects to the vehicles' radiators;

(c) Defendant failed to disclose to Plaintiff and the Class Members, either through warnings or recall notices, and/or actively concealed the fact from them that the radiator and transmission system was defective, despite the fact that it learned of such Defect as early as 2005.

(d) Defendant caused Plaintiff and the Class Members to expend sums of money at its dealerships and elsewhere to repair and/or replace the radiator and transmission system and/or radiator and transmission system components, despite the fact Defendant had prior knowledge of the defects at the time of placing said vehicles into the stream of commerce.

(e) Defendant occasionally has admitted to some Vehicle owners or lessees by its words and action, that the Defect should be covered by its warranties and denied this to others. Defendant thereby maintained a secret warranty practice for some while denying it for others, thus constituting an unfair, deceptive, arbitrary and unconscionable trade practice.

42. Each and all of the aforementioned conduct is and was deceptive, false, fraudulent and constitutes an unconscionable commercial practice in that Defendant has, by the use of false or deceptive statements and/or knowing intentional material omissions, misrepresented and/or concealed the true defective nature of the radiators and/or transmissions for the 2005 Pathfinder.

43. In making these misrepresentations of fact and/or material omissions to prospective customers while knowing such representations to be false, Defendant has

misrepresented and/or knowingly and intentionally concealed material facts and breached its duty not to do so.

44. Members of the public were deceived by and relied upon Defendant's affirmative misrepresentations and failures to disclose.

45. Such acts by Defendant are and were deceptive acts or practices which are and/or were, likely to mislead a reasonable consumer purchasing the vehicle. Said deceptive acts and practices aforementioned are material. The sale and distribution in New York of the Class Vehicles was a consumer-oriented act and thereby falls under the New York consumer fraud statute, General Business Law §§ 349 and 350.

46. As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiff and the Class Members have been damaged as alleged herein, and are entitled to recover actual and/or punitive damages and/or trebled or statutory damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

47. In addition, Plaintiff seeks punitive damages and reasonable attorneys' fees. The Declaratory Judgment Subclass Members seek a declaration that their defective radiator and transmission systems must be repaired at Defendant's expense.

**<u>SECOND CAUSE OF ACTION</u>**
**(Unjust Enrichment)**

48. Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

49. Defendant distributed the Vehicles into the stream of commerce with the knowledge that these Vehicles would be purchased or leased by consumers based on a reasonable expectation that the radiator and transmission system in the Vehicles would be free of defects.

50. Defendant distributed the Vehicles with the knowledge that the leak from the radiators and resultant transmission damage from the leaks made these Vehicles worth less than the defect-free price being paid for them.

51. Nissan knew that, if it disclosed its knowledge of the existence of the Defect, it would be liable for replacement or repair of defective radiators and/or for repair or replacement of damaged transmissions, and would face adverse consequences to its reputation and sales. In addition, failing to disclose the Defect would allow Nissan's dealerships to generate additional significant revenues from the costs associated with the replacement of the defective radiators and/or damaged transmissions that had experienced the manifestations of the Defect. As a result, Nissan sought to avoid this liability and the adverse consequences, and at the same time to enhance the revenue stream to its dealership's repair garages, by intentionally and fraudulently concealing this Defect.

52. Defendant received an economic benefit at the expense of the consumers of the Vehicles.

53. In the circumstances, principles of equity and good conscience make it unjust for Defendant to retain the benefit conferred on it by consumers of the Vehicles and Defendant should be required to pay for this benefit.

**THIRD CAUSE OF ACTION**
**(Breach of Express Warranty)**

54. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

55. Plaintiff and the Class members have entered into certain written warranty agreements with Nissan. Pursuant to the Basic Warranty, Nissan agreed it would provide Plaintiff and the Class members with 2005 Pathfinder vehicles that were in proper working order and would make all such replacements or repairs "needed to correct defects in materials or workmanship" of all parts and components of each new Pathfinder vehicle supplied by Nissan. Nissan was therefore obligated to repair and/or service any defects or problems with the radiators and/or transmission which resulted from the Defect, that Plaintiff and the Class members experienced. In exchange for these duties and obligations, Nissan received payment of the purchase or lease price for the above-mentioned Pathfinder vehicles from Plaintiff and the Class members.

56. The Basic Warranty's express terms were breached by Defendant with respect to Plaintiff and all Class members who did not exceed the 36,000 mile/36 months since Defendant refused to repair the radiator leaks and/or resultant transmission damage experienced by Plaintiff and Class members even when the symptoms of the inherent Defect appeared within the period of Basic Warranty coverage. In addition and alternatively, the Powertrain Coverage Warranty was breached by Defendant to the extent such symptoms and Defect to the radiator and/or resultant transmission appeared within the period of the 60 month/60,000 mile Powertrain Coverage, and Nissan refused to repair the Defect under warranty.

57. In addition, Defendant is aware that the Defect will continue to result in radiator

leaks and transmission damage and failure even after either of the above referenced warranty periods have lapsed and such conduct on the part of Defendant is patently unconscionable, rendering the warranty's durational limitations unenforceable, since Nissan was aware of basic design defects in the system prior to selling or leasing the vehicles.

58. The durational limitation in the warranty as well as the unconscionable interpretation of the scope of warranty coverage by Defendant are unenforceable as unconscionable provisions under New York law, including but not limited to New York's Uniform Commercial Code section 2-302 which states as follows:

> **§2-302. Unconscionable Contract of Clause**
> (1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.
>
> (2) When it is claimed or appears the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

59. Moreover, Nissan used its superior knowledge of the existing Defect to offer a warranty which it knew or should have known would not cover this material Defect known to Nissan to exist in the Vehicles at the time of purchase or lease by Plaintiff and members of the Class. Nissan breached the express warranty in providing Plaintiff and the Class with 2005 Pathfinder Vehicles which contain a defect known to Defendant at the time of delivery of the defective Vehicles and which it has refused to repair or replace.

60. Plaintiff gave notice to Defendant of his Vehicle's defect through its Dealer and

agent and through its customer service division, and gave Defendant a chance to repair the defect under the Basic Warranty and/or the extended Powertrain Coverage, which Defendant refused to do.

61. Nissan also violated the Basic Warranty and/or Powertrain Warranty and any implied covenant of good faith inherent in such agreement by selling Plaintiff and the Class members vehicles with limited warranties under circumstances in which Nissan knew or should have known that the defective radiator would fail and cause the transmission to fail prematurely beyond the warranty periods.

62. As a result of the foregoing, Plaintiff and the Damages Subclass members are entitled to compensatory damages for breach of express warranty in an amount to be proven at trial, and punitive damages because defendant acted in a manner contrary to public purpose and with intent to exclude such Defects from coverage. In addition, Plaintiff seeks a declaratory judgment as set forth herein below in the Sixth Claim.

**FOURTH CAUSE OF ACTION**
**(Breach of Implied Warranty of Merchantability)**

63. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

64. Nissan designed, manufactured and ultimately sold or leased the 2005 Pathfinder, model year 2005, to Plaintiff and the Class members.

65. Nissan was a merchant because it marketed, sold and distributed its Pathfinder vehicles, model year 2005, to Plaintiff and the Class members.

66. Nissan reasonably expected Plaintiff and the Class members to use the vehicles and such use by Plaintiff and the Class members of the vehicles was reasonably foreseeable.

67. At the time that Nissan sold the vehicles to Plaintiff and the Class members, it impliedly warranted that said Vehicles, including their radiators and transmissions were of merchantable quality.

68. Nissan breached this implied warranty because the radiators that Nissan installed in the Vehicles was not of merchantable quality at the time the vehicles were sold.

69. Nissan had prior knowledge and notice of the defective nature of the Vehicles' radiators and, therefore, of its breaches of warranty, but took no action to remedy the defects or to cure the breach.

70. As a direct and proximate result of Nissan's breaches of the implied warranty of fitness, Plaintiff and the Damages Subclass members have been injured in an amount to be proven at trial. Members of the Declaratory Relief Subclass are entitled to relief requested therein.

**FIFTH CAUSE OF ACTION**
**(Breach of Contract)**

71. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

73. Plaintiff asserts this cause of action on behalf of himself and the Class.

74. Plaintiff and the Class members have entered into certain contracts and warranty agreements with Nissan. Pursuant to these contracts and agreements, Nissan agreed to provide Plaintiff and the Class members with certain 2005 Pathfinder vehicles that were in proper working order and that were fit for their intended purpose. This included the radiator and the transmission systems of these vehicles. Nissan was further obligated to repair and/or service any defects or problems with the vehicles that Plaintiff and the Class members experienced. In exchange for

these duties and obligations, Nissan received payment of the purchase or lease price for the above-mentioned Pathfinder vehicles from Plaintiff and the Class members.

75. Plaintiff and the Class members satisfied their obligations under these contracts, warranties and agreements.

76. Nissan failed to perform as required by the contracts and agreements, and breached said contracts and agreements because it provided Plaintiff and the Class members with Pathfinders vehicles with defective radiators and transmissions and failed to repair such defects.

77. Nissan also violated the implied covenant of good faith inherent in such contracts and agreements by selling Plaintiff and the Class members vehicles with limited warranties under circumstances in which Nissan knew that the defective radiators and transmission would fail beyond the warranty periods.

78. As a result of the foregoing, Plaintiff and the Damages Subclass members are entitled to compensatory damages in an amount to be proven at trial.

**<u>SIXTH CAUSE OF ACTION</u>**
**(Declaratory Judgment for Declaratory Relief Subclass)**

79. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

80. Plaintiff asserts this cause of action on behalf of himself and the Declaratory Relief Subclass.

81. There is a justifiable dispute as to whether the radiators are and/or should be covered under the Basic Warranty and/or the Powertrain 60 month/60,000 miles Warranty by Defendant.

82. By virtue thereof, Plaintiff seeks a declaratory judgment declaring that the remedial work necessary to correct the defect, alleged herein with respect to the vehicles' radiator and transmissions are covered warranty claims.

**PRAYER FOR RELIEF**

**WHERFORE**, Plaintiff, individually and on behalf of all others similarly situated, prays for a judgment against defendant as follows:

a. For an order certifying the Class and/or subclasses, appointing Plaintiff as representative of the Class and each Subclass, and appointing the law firms representing Plaintiff as counsel for the Class;

b. For a declaration that the remedial work necessary to correct the Defects is covered by the Basic Warranty;

c. For compensatory damages sustained by Plaintiff and the Damages Subclass;

d. For compensatory damages and/or restitution or refund of all funds acquired by Defendant from Plaintiff, the Damages Subclass, and the general public as a result of Defendant's unlawful, unfair, fraudulent, deceptive and unconscionable practices described hereinabove in the Consumer Fraud Act claim;

e. Trebling of damages suffered by the Class and/or appropriate subclass;

f. For payment of costs of suit herein incurred;

g. For both pre-and post-judgment interest on any amounts awarded;

h. For payment of reasonable attorneys' fees and expert fees; and

i. For such others and further relief as the Court may deem proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: September 29, 2010

**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**

By: ______________________
Gary S. Graifman, Esq.
Michael L. Braunstein, Esq.
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
Tel: (845) 356-2570

Howard T. Longman, Esq.
**STULL, STULL & BRODY**
6 East 45th Street, Suite 500
New York, NY 10017
Tel: (212) 687-7230

***Attorneys for Plaintiff***