UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
IN RE NISSAN RADIATOR/TRANSMISSION   :   10 CV 7493 (VB)
COOLER LITIGATION                                       :
                                                                              :   ELECTRONICALLY
                                                                              :   FILED
                                                                              :
------------------------------------------------------------x

**MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANT NISSAN NORTH AMERICA, INC.'S
RESPONSE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT**

SEDGWICK LLP
*Attorneys for Defendant*
NISSAN NORTH AMERICA, INC.
1717 Main Street, Suite 5400
Dallas, TX  75201
Telephone: (469) 227-8200
Facsimile: (469) 227-8004
paul.cauley@sedgwicklaw.com

125 Broad Street, 39th Floor
New York, New York 10004
Telephone: (212) 422-0202
Facsimile: (212) 422-0925
david.covey@sedgwicklaw.com

# I.
# INTRODUCTION

Defendant Nissan North America, Inc. ("NNA") requests that the Court grant the relief sought by Plaintiffs in their Motion for Preliminary Approval. Particularly, NNA requests that the Court: (1) grant preliminary approval of the proposed class action settlement; (2) certify the proposed settlement class for settlement purposes only; (3) authorize the publication of Class Notice; and (4) schedule a hearing for final approval of the settlement. NNA writes separately to provide its perspective on the claims and defenses and, in light of that, demonstrate that the proposed settlement provides significant consideration to the class, is fair and reasonable and deserves the approval of the Court.

# II.
# FACTUAL BACKGROUND

The Nissan Pathfinder, Frontier, and Xterra vehicles were newly designed for the 2005 model year. Over time, as the vehicles aged, Nissan determined that, on a small percentage of vehicles equipped with automatic transmissions, an internal fatigue crack in the radiator oil cooler tube might occur at higher mileages, leading to internal leakage of engine coolant, cross-contamination of engine coolant and transmission fluid and, potentially, damage to the vehicles' transmissions.

Consequently, in October 2010, to demonstrate its commitment to stand behind its products and its customers, NNA voluntarily extended the warranty on the radiator assembly for 2005-2010 model year Nissan Pathfinder, Xterra, and Frontier vehicles with automatic transmissions – something it was already in the process of doing before any lawsuit was ever filed. NNA more than doubled the Nissan New Vehicle Limited Warranty, as it applied to the radiator assembly and its component parts, from three years/36,000 miles, whichever occurs first, to eight years/80,000 miles, whichever occurs first. The warranty extension also included a

1

reimbursement program for customers who previously paid to have their radiator assembly or other affected components (including the transmission) repaired or replaced within the eight-year or 80,000-mile warranty extension period, whichever occurs first.

In its ongoing effort to assure customer satisfaction, NNA continued to monitor field information and assess whether the extension achieved the desired customer satisfaction. In doing so, NNA determined that the percentage of customers experiencing a problem with internal leakage of engine coolant and resulting cross-contamination of engine coolant and transmission fluid within the first eight years or 80,000 miles was projected to be less than 1.3%, and that these customers were very satisfied with the extension. NNA also learned that some customers experienced cross-contamination of engine coolant and transmission fluid for the first time after eight years or 80,000 miles; although, NNA projected that the percentage of customers expected to experience internal leakage of engine coolant at less than 10 years or 100,000 miles would still be less than 2.8%.

NNA believes Plaintiffs' claims have no merit, especially given the prior warranty extension to 8 years or 80,000 miles, which was already provided. In fact, Nissan has already prevailed on certain claims and believes that it would ultimately have prevailed on all claims. Despite its belief that it has no legal obligation to take any further action, NNA nevertheless desired to enter into settlement of these claims as a further commitment to its Nissan Pathfinder, Xterra, and Frontier customers to ensure the satisfaction of any of its customers who may not have been fully satisfied by the previous warranty extension, to preserve and enhance goodwill with its Nissan Pathfinder, Xterra, and Frontier customers, including the Plaintiffs, and to end further litigation, which could be protracted, burdensome and expensive. Consequently, NNA and Plaintiffs entered into arm's length settlement negotiations and arrived at a settlement whereby NNA would extend warranty protection for the radiator assembly up to 10 years or

100,000 miles, whichever is less, subject to certain customers co-pays. NNA's desire to pursue customer satisfaction through the additional warranty extension and the Parties' settlement negotiations resulted in the proposed settlement for which the parties seek the Court's approval.

## III.
## DESCRIPTION OF PROPOSED SETTLEMENT

The proposed settlement reflects NNA's agreement to give repair and reimbursement benefits, if and as needed, to all former and current owners and lessees of a 2005-2010 model year Nissan Pathfinder, Nissan Xterra or Nissan Frontier vehicle in the United States and its territories, including Puerto Rico, excluding fleet and governmental purchasers and lessees ("Settlement Class Members"). Under the proposed settlement, NNA has agreed to the following repair benefit: Subject to the payment of customer co-pay amounts described below, NNA agrees to make repairs through authorized NNA Dealers, if and as needed, on the radiator assembly and other damaged components (including the transmission) in 2005-2010 model year Nissan Pathfinder, Xterra, and Frontier vehicles with automatic transmissions ("Class Vehicles") owned or leased by Settlement Class Members because of cross-contamination of engine coolant and transmission fluid (and inclusive of towing costs, if any) as a result of a defect in the radiator up to a maximum of 10 years or 100,000 miles, whichever is less, subject to the following customer co-payments:

> (a) All repairs on vehicles that exceed eight years or 80,000 miles, whichever is less, but fewer than nine years or 90,000 miles, whichever is less, are subject to a customer co-pay in the amount of $2500 which is the responsibility of the Settlement Class Member.
>
> (b) All repairs on vehicles that exceed nine years or 90,000 miles, whichever is less, but fewer than 10 years or 100,000 miles, whichever is less, are subject to a customer co-pay in the amount of $3000 which is the responsibility of the Settlement Class Member.

All repairs must be performed by an authorized NNA Dealer, and all Settlement Class Members'

3

warranty claims will be processed through NNA's standard warranty payment processes with its Dealers.

NNA also agrees to reimburse any Settlement Class Member who has paid for repairs to his or her radiator and other damaged components (including the transmission) because of cross-contamination of engine coolant and transmission fluid (and inclusive of towing costs, if any) as a result of a defect in the radiator between 8 years or 80,000 miles, whichever is less, and 10 years or 100,000 miles, whichever is less, subject to the customer co-pay amounts described above.

Further, to the extent any of the Settlement Class Members did not receive notice of the reimbursement program under the previously announced 8 years/80,000 warranty extension, did not submit a claim for reimbursement previously, or had all or part of their claim denied, NNA will honor those reimbursement claims by Settlement Class Members for repairs to the radiator and other damaged components (including the transmission) because of cross-contamination of engine coolant and transmission fluid (and inclusive of towing costs, if any) as a result of a defect in the radiator.

## IV.
## IN THE ABSENCE OF THE SETTLEMENT, THE PROPOSED CLASS MEMBERS HAVE NUMEROUS IMPEDIMENTS TO RECOVERY

Plaintiffs' Third Amended and First Consolidated Class Action Complaint asserts various claims on behalf of themselves and the proposed class against NNA for, among others, breach of warranty, fraud, unjust enrichment, and violation of State consumer protection statutes. However, all of these claims are highly problematic.

First, the vast majority of class members have not experienced the alleged radiator problem at all. Their vehicles have continued to function properly, establishing that they are merchantable as a matter of law. Moreover, because they have not malfunctioned and have not

been presented for repair, NNA could not have breached any express warranty as to those vehicles. Further, these class members have not sustained any type of economic loss that would qualify them to receive a remedy under any state consumer statute. Nor could such a class member plausibly claim that NNA has been unjustly enriched in any way.

Second, if the class member's radiator malfunctioned *within* the written warranty period, as previously extended to 8 years/80,000 miles, those repairs are already covered by NNA, eliminating any possible claim for damages.

Third, the claims of the remaining class members who allege their radiator malfunctioned *outside* the 8 year/80,000 mile extended warranty will not likely succeed because their vehicles outlasted Nissan's warranty. Under basic principles of warranty law, the terms of the warranty govern the obligations of the seller and the enforceable expectations of the buyer. Manufacturers do not warrant that vehicles will never need a repair or that a part will not fail. Nissan never made such a promise, and Plaintiffs have no legal right to expect that their vehicles will run forever without needing repairs. Indeed, Nissan's express "repair" warranty clearly indicated that repairs might be necessary and also clearly delineated, and limited, Nissan's responsibility for making such repairs.

Prevailing law does not permit Plaintiffs to disregard express warranty limitations or this Court to rewrite the parties bargained-for warranty obligations. As the Second Circuit held in the landmark *Abraham v. Volkswagen of America, Inc.*, 795 F.2d 238 (2d Cir. 1986), opinion, a claimant cannot demand a repair after the warranty period has expired, even if it is alleged that a defect existed before repairs were needed. Other Circuit courts are in accord. *See, e.g.*, *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022-23 (9th Cir. 2009); *Duquesne Light Co. v. Westinghouse Electric Corp.*, 66 F.3d 604, 616-17 (3d Cir. 1995); *Canal Electric Co. v. Westinghouse Electric Co.*, 973 F.2d 988, 993 (1st Cir. 1992) ("[C]ase law almost uniformly

5

holds that time-limited warranties do not protect buyers against hidden defects – defects that may exist before, but typically are not discovered until after, the expiration of the warranty period."). Plaintiffs have attempted to circumvent this rule by contending that the warranty limitation was unconscionable because NNA was allegedly aware of the so-called defect. Yet, the weight of authority confirms that mere allegations of the seller's knowledge are insufficient to defeat the warranty limitation. *See id.*; *Alban v. BMW of North America*, No 09-5398, 2011 WL 900114, at *8-9 (D.N.J. March 15, 2011); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 972 (N.D. Cal. 2008) (citing *Abraham*, 795 F.2d at 250), *aff'd*, 332 Fed. Appx. 489 (9th Cir. 2009).

The implied warranty claims of the high-mileage class members must also fail. Virtually all implied warranty claims are barred by limitations. Implied warranty claims must be brought within four years and the limitations period accrues at the time the vehicle is originally delivered. *See, e.g.*, *Woods v. Maytag Co.*, No. 10-cv-0559, 2010 WL 4314313, at *2 (E.D.N.Y. Nov. 2, 2010); *N.J. Transit Corp. v. Harsco Corp.*, 497 F.3d 323, 327 (3d Cir. 2007) (New Jersey law) (citing N.J. STAT. ANN. § 12A:2-725(1), (2))); *McCracken v. Ford Motor Co.*, 588 F. Supp. 2d 635, 642 (E.D. Penn. 2008) (citing 13 PA. CONS. STAT. ANN. §§ 2725(a) & (b)); *Mexia v. Rinker Boat Co., Inc.*, 174 Cal. App. 4th 1297, 1306 (Cal. Ct. App. 2009) (citing CAL. U.C.C. § 2725); *Damron v. Media Gen., Inc.*, 3 S.W.3d 510, 512 (Tenn. App. 1999); TEX. BUS. & COM. CODE § 2.725(a). All of the named Plaintiffs' vehicles were acquired long before the four year period and given the amount of time required to amass mileage beyond 80,000 miles, it is likely that claims of the vast majority of class members would be time barred.

The implied warranty claims face other impediments as well. Implied warranty relates to the basic fitness of the vehicle for providing transportation. *See, e.g.*, *Sheris v. Nissan North America, Inc.*, Civ. No. 07-2516, 2008 WL 2354908, at *6 (D.N.J. June 3, 2008); *Strauss v. Ford Motor Co.*, 439 F. Supp. 2d 680, 685 (N.D. Tex. 2006); *Zwiercan v. Gen. Motors Corp.*,

6

No. 3235, 2002 WL 1472335, at *4 n.7 (Pa. Ct. of Common Pleas May 22, 2002); *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1295-96 (Cal. Ct. App. 1995).  Where the vehicle has been driven for tens of thousands of miles without difficulty the vehicle is merchantable as a matter of law.  *See, e.g.*, *Sheris*, 2008 WL 2354908, at **5-6; *Lee v. General Motors Corp.*, 950 F. Supp. 170, 174 (S.D. Miss. 1996).

To the extent that the state consumer protection statute claims depend upon affirmative misrepresentation, such claims lack any factual basis.  In the face of NNA's Motion to Dismiss, Plaintiffs failed to identify a single factual misrepresentation and these claims were dismissed by the Court.  *Szymczak v. Nissan North America, Inc.*, No. 07-cv-07493, 2011 WL 7095432, at **14-15, 18-20 (S.D.N.Y.  Dec. 16, 2011). While the Court allowed some omissions-based claims to survive, it is clear that such claims will be difficult to sustain past the summary judgment stage.  All such claims depend upon establishing that NNA was aware of the so-called defect at the time the vehicle was originally sold.  Yet, as Plaintiffs expressly allege and as their own experience indicates, the issue does not generally manifest itself for several years and tens of thousands of miles.  These circumstances alone indicate that it is highly unlikely that NNA had advance knowledge of the issue.  Additionally, NNA's voluntary unilateral extension of the warranty is inconsistent with the allegation that NNA had knowledge of the radiator issue at the time of the sale of the vehicles.

The unjust enrichment claims suffer from a variety of legal impediments, including the existence of the express warranty covering the subject area and the lack of direct relationship between NNA and the class members.  *See, e.g.*, *Moynet v. Courtois*, 8 So.3d 377, 379 (Fla. App. 2009); *Donchi v. Robdol L.L.C.*, 640 S.E.2d 719, 724 (Ga. Ct. App. 2007); *Dabrowski v. Abax Inc.*, 882 N.Y.S.2d 119, 120 (N.Y. App. Div. 2009).  Moreover, it would be difficult to argue that NNA was unfairly enriched when the vehicle it provided served its function without

7

objection for a period longer than the express warranty. *See, e.g.*, *Fabri v. United Techs. Int'l, Inc.*, 387 F.3d 109, 128 (2d Cir. 2004).

In addition to the substantive deficiencies of the claims asserted, it is highly questionable whether the claims could have been certified as a litigation class. While NNA does not dispute, for purposes of responding to Plaintiffs' Motion for Preliminary Approval of this Settlement, that the class is sufficiently numerous (NNA estimates that there over 800,000 class vehicles), that there are some common questions of fact and law, that the class representatives are typical of the class as a whole and that the representatives would adequately represent the settlement class, it does not appear that class litigation would be manageable with regard to this dispute.

Many of the causes of action require individualized proof to establish the necessary elements of the claims. Many consumer protection statutes require proof of reliance, or at least an individualized showing of causation. In such cases, class certification is inappropriate. As indicated, many of the class vehicles have never malfunctioned and for the ones where some malfunction has been asserted, it will be necessary to determine the cause of the problem. This too creates individualized issues. The experience of the plaintiffs demonstrates that potential damages can vary greatly in amount and that no one-size-fits-all damages model is appropriate.

In short, the class members would face significant, indeed insurmountable obstacles in prevailing upon the claims asserted in the Complaint.  Indeed, the court has already disposed of a number of claims on NNA's Motion to Dismiss, dismissing Plaintiffs' claims for traditional breach of warranty, breach of implied warranty, misrepresentation-based fraud, violation of N.Y. Gen. Bus. Law § 350; violation of the New Jersey Consumer Fraud Act (N.J. STAT. ANN. § 56:8-1, *et seq.*), and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (73 PA. STAT. ANN. § 201-1, *et seq.*) and limiting Plaintiffs' remaining state consumer protection statute claims to those Plaintiffs who reside in the state under which the violation was

8

claimed. Any potential settlement must be evaluated in light of the difficulties the class would face in establishing its claims. *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 740-41 (S.D.N.Y. 1985)). In the face of the obstacles facing the class, the proposed settlement is more than fair and reasonable.

## V.
## THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

The proposed settlement offers class members substantial benefits. It extends NNA's warranty on the radiator assembly from eight years/80,000 miles, whichever occurs first, to 10 years/100,000 miles, whichever occurs first, subject to certain customer co-payments. This repair relief is meant to provide a remedy for the bulk of motorists that experience the condition after NNA's warranty would have otherwise expired. The reimbursement benefit, whereby NNA will reimburse Settlement Class Members who have already paid for a repair to their Class Vehicle caused by cross-contamination of engine coolant and transmission fluid as a result of a defect in the radiator, is designed to provide the same level of benefit to the class members as they would have received under the repair benefit.

The co-payment requirement reasonably reflects the significant legal obstacles that high-mileage consumers would have faced in securing legal recovery against NNA. The more miles the vehicle was driven without incident, the less likely the trier of fact would determine that the vehicle was not merchantable or that NNA breached any express warranty, acted contrary to any representation with regard to the vehicle, or failed to disclose a material fact. Several of the Plaintiffs have averred that there were repair costs that approached or even exceeded $5,000. Consequently, the repair benefit has substantial monetary value for the class members who require such significant repairs.

The co-payment approach is believed to be superior from the standpoint of the class members to alternative approaches, such as providing a voucher or coupon for a fixed amount. Under the co-payment approach, the class members' out-of-pocket expenses are capped regardless of the ultimate cost for the repair. Further, the class member is relieved of the necessity of shopping for the least expensive repair.

Notably, neither the repair nor the reimbursement benefit is subject to any overall cap. Although NNA believes only a small percentage of vehicles will experience the issue involved, the settlement is favorable to the class because NNA assumes the risk that more vehicles will experience the issue than expected.

Under the proposed settlement, NNA agrees to pay attorneys' fees and expenses, as well as Plaintiffs' incentive awards, to be determined by the Court. The amount of fees are not deducted from any benefit occurring to the class. Furthermore, NNA has agreed to pay for all expenses for class notice and claims administration.

## VI.
## CONCLUSION

For the foregoing reasons, NNA respectfully requests that the Court (1) grant preliminary approval of the proposed settlement; (2) preliminarily certify a settlement class, for settlement purposes only, consisting of: All former and current owners and lessees of a 2005-2010 model year Nissan Pathfinder, Nissan Xterra or Nissan Frontier vehicle in the United States and its territories, including Puerto Rico, excluding fleet and governmental purchasers and lessees; (3) authorize the dissemination of Class Notice as provided for in the Settlement Agreement; and (4) schedule a final approval hearing approximately ninety days after Class Notice is published to the Class.

10

DL/3533786v3

Dated: September 6, 2012

                                                            Respectfully submitted,

By:   *s/ E. Paul Cauley, Jr.*
       E. Paul Cauley, Jr., Esq. (*admitted pro hac vice*)
       S. Vance Wittie, Esq. (*admitted pro hac vice*)
       Nina S. McDonald, Esq. (*admitted pro hac vice*)
       SEDGWICK, LLP
       1717 Main Street, Suite 5400
       Dallas, Texas 75201
       (469) 227-8200

       David M. Covey, Esq. (DMC-3729)
       SEDGWICK LLP
       125 Broad Street, 39th Floor
       New York, New York 10004
       (212) 422-0202

       *Attorneys for Defendant Nissan North America, Inc.*

## CERTIFICATE OF SERVICE

I herby certify that on the 6th day of September 2012, I electronically filed the foregoing **DEFENDANT NISSAN NORTH AMERICA, INC.'S MEMORANDUM OF LAW IN SUPPORT OF NISSAN NORTH AMERICA, INC.'S RESPONSE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** with the U.S. District Court.  Notice will automatically be electronically mailed to the following individuals who are registered with the U.S. District Court CM/ECF System:

Gary S. Graifman
Michael L. Braunstein
Kantrowitz, Goldhamer & Graifman, P.C.
747 Chestnut Ridge Road
Chestnut Ridge, New York  10977

Howard T. Longman
Mark Levine
Stull, Stull & Brody
6 East 45th Street, Suite 500
New York, New York  10017

Matthew Mendelsohn
David A. Mazie
Mazie Slater Katz & Freeman, LLC
103 Eisenhower Parkway
Roseland, New Jersey  07068

*s/ E. Paul Cauley, Jr.*
E. Paul Cauley, Jr.